IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


UNITED STATES OF AMERICA,

vs.                                         Case No.  5:02cr19-RH
                                            Case No.  5:05cv68-RH/WCS
COLLIS EDWARD HOBBY,

        Defendant.
_____/


## REPORT AND RECOMMENDATION

Pending in this case is an amended motion to vacate and set aside a sentence filed pursuant to 28 U.S.C. § 2255.  Doc. 79.  The United States filed a response.  Doc. 87.  Defendant filed a reply.  Doc. 89.  Defendant then was granted leave to supplement the record.  Doc. 90.  The United States filed a response.  Doc. 93.

**Procedural status of the case**

The indictment charged Defendant with possession with intent to distribute (count one) and manufacturing (count two) more than 100 marijuana plants.  Doc. 1.  The Government filed a notice pursuant to 21 U.S.C. § 851(b) of intent to seek an enhanced sentencing due to a prior conviction.  Doc. 18.  The notice attached a copy of the prior conviction, but did not specifically mention the enhanced range of penalties.  *Id.*  The prior conviction was in case number MCR 91-05034-001 (now case number

5:91cr5034-RH on the electronic docket) in this district, for conspiracy to possess with intent to distribute marijuana. *Id.* Defendant was sentenced to a prison term of 75 months in that case, which was a departure from the guideline range (151 to 188 months) due to Defendant's substantial assistance.

On October 28, 2002, the jury returned a not guilty verdict as to count one and a guilty verdict as to count two. Doc. 27. As to count two, the jury specifically found Defendant guilty of "manufacturing" 100 or more marijuana plants. Doc. 27, p. 3. By judgment entered on April 2, 2003, Defendant was sentenced to a prison term of 120 months. Doc. 49. He was sentenced to a concurrent term of 96 months for violating supervised release in case number 5:91cr5034-RH. *Id.* The conviction was affirmed on appeal, with the mandate received in this court on July 6, 2004. Doc. 73.

**Ground one**

Defendant contends his attorney was ineffective for failing to advise him of "a possible plea deal that was discussed at trial sidebar." Doc. 79, p. 3 (p. 3 on the electronic case filing docket, ECF). He alleges in his memorandum that he was not informed by counsel "of a possible plea negotiations [sic] for a plea to less than 100 plants, which would have taken Movant out of the 10 year minimum mandatory range." *Id.*, memo, p. 2 (p. 7 on ECF). He asserts that had he been offered such a plea agreement, he would have accepted it. *Id.*, p. 7 (p. 12 on ECF).

To show ineffective assistance of counsel, Petitioner must demonstrate both deficient performance and prejudice to the outcome. Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984). To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that

are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066.

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068. In the context of a guilty plea, the first part of the Strickland test is the same, but "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Jackson v. United States, 976 F.2d 679, 681 (11th Cir. 1992), citing United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986).

The only evidence that Defendant submits to show a plea offer is the following at side-bar:

> Mr. Lowe and I have engaged in some discussions, plea negotiations, about the resolution of this case to less than a hundred, avoiding the minimum mandatory. And I haven't had an opportunity to talk to my client about it. If we could arrive at a resolution, would you be willing to entertain such an indication?

Doc. 64, trial transcript, p. 287. The Court responded that it had no comment and would not be involved in such discussions, but would entertain a plea if one were to be presented. Id., p. 288. Mr. Lowe responded: "And it's just exploratory." Id. Defendant has not come forward with evidence that Mr. Lowe had offered a plea to involvement

with less than 100 plants.  It is only evidence that Mr. Lowe and Defendant's lawyer had

talked about it.

The Government, through Assistant United States Attorney Michael Simpson,

states:

> Mr. Lowe advises that defendant's counsel asked him to consider a lesser
> plea, but that the government did not agree to do so, because of the policy
> of the United States Attorney's Office, Northern District of Florida,
> requiring that a defendant plead to the most severe readily provable count.

Doc. 87, p. 6.  It is noted by the court that the United States Attorney in this district has

a policy to not offer a plea agreement to any charge except the more serious charge

that can reasonably be proved.  It is there quite unlikely that Mr. Lowe offered to accept

a plea to less than 100 marijuana plants.  He might have done so if he could not prove

100 plants or more.  But as the trial showed, there was evidence to prove that

Defendant was involved with growing more than 100 marijuana plants, and the jury so

found beyond a reasonable doubt.  The "most severe readily provable count" was to

100 or more plants, precluding a plea to less than 100 plants.

Defendant responds that the burden of proof as to this claim is on the

Government.  Doc. 87, p. 1.  That is not correct.  Defendant has the burden of proof with

respect to § 2255 claims.  Mitchell v. United States, 482 F.2d 289, 296 (5th Cir. 1973)

("if the record of the conviction under collateral attack shows that the defendant was

represented by counsel, the convicted defendant has the burden of impeaching the

record").  Defendant has not alleged facts to show that the Government offered to allow

him to plead guilty to involvement with less than 100 marijuana plants.  The only person

who might have such evidence is Defendant's attorney, but Defendant has not alleged

what his attorney might say on the subject or provided an affidavit from his attorney.  All

that Defendant has shown is that is attorney was trying to obtain a plea to the lesser

offense, not that such a plea offer was made by the Government.  An evidentiary

hearing is not needed where the allegations of fact and evidence presented by the

Defendant are insufficient to state a claim.  Accordingly, this claim is without merit.

**Ground two**

Defendant's attorney filed a motion to suppress on the day the trial began.  Doc.

23.  The motion was considered during trial based upon trial testimony.  Doc. 63, pp. 4-

5.  Defendant initially contended that his attorney was ineffective for failing to argue

Fourth Amendment issues *at trial* and on appeal.  Doc. 79, p. 3 (p. 3 on ECF).  He

contended in his motion that he was arrested without a warrant in violation of the Fourth

Amendment, and he contends the search was illegal because it went beyond the

curtilage of his home.  *Id.*  In his memorandum, however, Defendant admits that the

argument was made at trial, and only asserts ineffectiveness for failing to raise it on

appeal.  *Id.*, memo, p. 9 (p. 14 in ECF).

Ineffective assistance of appellate counsel claims are analyzed under the test

enunciated in Strickland v. Washington.  Grubbs v. Singletary, 120 F.3d 1174, 1176

(11th Cir. 1997); Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*,

502 U.S. 1077 (1992).  With regard to attorney error, appellate counsel need not raise

every nonfrivolous issue.  Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d

987 (1983).  "Experienced advocates since time beyond memory have emphasized the

importance of winnowing out weaker arguments on appeal and focusing on one central

issue if possible, or at most on a few key issues."  463 U.S. at 751-752, 103 S.Ct. at

3313.  The "process of 'winnowing out weaker arguments on appeal and focusing on'
those more likely to prevail, far from being evidence of incompetence, is the hallmark of
effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661,
2667 (quoting Barnes).  "Notwithstanding *Barnes*, it is still possible to bring a *Strickland*
claim based on counsel's failure to raise a particular claim, but it is difficult to
demonstrate that counsel was incompetent. *See, e.g., Gray v. Greer*, 800 F.2d 644, 646
(C.A.7 1986) ('Generally, only when ignored issues are clearly stronger than those
presented, will the presumption of effective assistance of counsel be overcome')."
Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000).  *See
also* Bundy v. Dugger, 850 F.2d 1402, 1411 (11th Cir. 1988), *cert. denied,* 488 U.S.
1034 (1989) (discussing Strickland, and Barnes).  To determine prejudice, the court
reviews the merits of the omitted or poorly presented claim, and will find prejudice only
where the claim would have a reasonable probability of success on appeal.  Heath v.
Jones, 941 F.2d at 1136.

In the motion to suppress, Defendant's attorney argued that the "area which was
video-taped and from which the evidence was seized was private property within the
curtilage of the Defendant's residence."  Doc. 23, p. 1.  The area was video-taped
without a search warrant, and it was argued that this warrantless search violated the
Fourth Amendment.  *Id.*  Defendant sought to suppress all items (the marijuana plants)
seized as a result of this warrantless search.  *Id.*, p. 2.

The Fourth Amendment issue, said the court, was whether the area in which the
marijuana was growing was within the curtilage of Defendant's residence or an open

field.  Doc. 63, p. 5.  The court entered an order on the motion for a new trial, explaining why the motion to suppress was denied:

> The marijuana plants were seized from rural, wooded property.  Some of the plants were being grown on Mr. Hobby's property; some were being grown on adjoining property in which Mr. Hobby had no ownership interest.  The initial discovery (of the plants on the adjoining property) was made by a game warden as part of his routine duties enforcing the state's hunting laws.  None of the property from which seizures were made was fenced or posted.
>
> The plants were not within the curtilage of the mobile home in which Mr. Hobby lived.  That mobile home was some 50 to 75 yards away from the site of the seizures.  For the reasons set forth at greater length on the record at trial, Mr. Hobby's motion to suppress was and is unfounded. *See, e.g., United States v. Dunn,* 480 U.S. 294, 301, 107 S. Ct. 1134, 94 L. Ed. 2d 936 (1987); *Oliver v. United States*, 466 U.S. 170, 178, 104 S. Ct. 1735, 1741, 80 L. Ed. 2d (1984); *United States v. Hatch*, 931 F.2d 1478 (11th Cir. 1991).

Doc. 34, pp. 10-11.

The trial argument and the court's ruling on the motion to suppress are found at the end of the second day of trial.  Doc. 64, pp. 526-534.  Counsel for Defendant argued that there was a firebreak between the Fisher or Strasser property and Defendant's property.  *Id.*, 567.  She argued that the evidence was in dispute as to whether a person could see Defendant's property (or see marijuana on Defendant's property) from the Strasser plant site, and that there were old cars and a shed behind the trailer on Defendant's property.  *Id.*, p. 528.  She argued that there were car parts and car pieces in the back of Defendant's property, indicating personal use in that area, and indicating that the property was not intended to be an open area.  *Id*.  The site where the marijuana was growing on Defendant's property was 70 yards from his trailer.  *Id*.

Counsel cited two cases where the curtilage was found to include areas 50 to 80 yards

away from the residence.  *Id.*, p. 529.

> In denying the motion, the court found:
>
> This is not property on which any of the intimate activities that might be
> associated with a home would take place.  This is property, wooded
> property, scrub oak property.  Just property of the kind that exists all
> across North Florida.
>
> Here, there was not a fence.  There was not a, for all the record shows,
> not a no trespassing sign.  It's not posted property.  I don't believe the
> officers even have to trespass to get on it.  That would not matter on it, but
> I believe in Florida [that] any hunter could just walk on this property in
> pursuit of a deer or a squirrel, turkey, whatever the hunter chose to go
> there for.
>
> Now, at this time it's probably out of season for all of those things; but that,
> of course, [is] not relevant to the constitutional inquiry.
>
> The record is not real clear on just how close the cars are to this spot, but
> that would not matter.
>
> What's important is how far away the house is, and the fact that this site,
> where they went, is completely separate from the house.  It is simply
> wooded property that happens to be on the same parcel with the
> residence.  I think the law is clear that a warrant was not required to go on
> the property at that point.
>
> The argument as presented deals [with] Mr. Hobby's own property.  The
> Strasser property, obviously, there would be a standing problem, but it still
> would be subject to the same analysis, anyway.  So, even if there were
> not a standing problem, the ruling would be the same.

Doc. 64, pp. 532-534.  The court cited and discussed <u>Dunn</u>, <u>Oliver</u>, and <u>Hatch</u>, *supra*.

*Id.*, pp. 531-532.

The first case discussed by this court, <u>Oliver v. United States</u>, 466 U.S. 170, 104

S.Ct. 1735, 80 L.Ed.2d 214 (1984), dealt with "[t]he 'open fields' doctrine 'first

enunciated by this Court in *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed.

898 (1924), [permitting] police officers to enter and search a field without a warrant.' " 265 U.S. at 173, 104 S.Ct. at 1738.  In that case, police, acting on reports that marijuana was being raised on the defendant's farm, drove past the defendant's house to a locked gate with a "no trespassing sign."  *Id.*  They followed a footpath around the gate.  *Id.*  They passed a barn and a parked camper several hundred yards past the gate, and someone standing near the camper yelled, "No hunting is allowed, come back up here."  *Id.*  They identified themselves as police officers, returned to the camper, and found no one there when they got there.  *Id.*  Marijuana was found over a mile from the defendant's home.  *Id.*

The Court noted that the Fourth Amendment protections do not extend to "open fields."  265 U.S. at 176, 104 S.Ct. at 1740 (citing <u>Hester</u>).  The Court said that "an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home."  *Id.*, at 178, 104 S.Ct. at 1741.  The Court observed that open fields can be lawfully viewed from the air, and even a "no trespassing" sign cannot preclude the public from viewing an open field.  *Id.*, at 179, 104 S.Ct. at 1741.  The Court said that the curtilage, which is protected, is "the land immediately surrounding and associated with the home."  *Id.*, at 180, 104 S.Ct. at 1742.  The Court also said that a "thickly wooded area nonetheless may be an open field as that term is used in construing the Fourth Amendment."  *Id.*, at 180 n. 11, 104 S.Ct. at 1742 n. 11.

The second case discussed by this court is <u>United States v. Dunn</u>, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).  In <u>Dunn</u>, officers entered the defendant's property, a 198 acre ranch, crossing several fences to get to a barn.  480 U.S. at 297,

107 S.Ct. at 1137.  They observed what they thought was a drug laboratory in the barn

and, based upon the evidence acquired without a warrant, obtained a search warrant.

*Id.*, at 298, 107 S.Ct. at 1137.  The issue was whether the barn was within the curtilage

of the residence.  *Id.*, at 300, 107 S.Ct. at 1139.

The central question in determining the extent of curtilage is whether the "area

harbors the intimate activity associated with the sanctity of a man's home and the

privacies of life."  *Id.* (citations and quotation marks omitted).  Four factors are to be

considered:

> [T]he proximity of the area claimed to be curtilage to the home, whether
> the area is included within an enclosure surrounding the home, the nature
> of the uses to which the area is put, and the steps taken by the resident to
> protect the area from observation by people passing by.

*Id.*, at 301, 107 S.Ct. at 1139.  Applying these factors, the court concluded that

defendant's barn was outside the curtilage.  *Id.*  It noted that the barn was 50 yards from

the fence separating it from the house, and 60 yards from the house.  *Id.*, at 302, 107

S.Ct. at 1140.  It did not lie within an enclosed area around the home.  *Id.*  The barn was

not being used for "intimate activities of the home," that is, "the activities and privacies

of domestic life."  *Id.*  Finally, the fences were not intended to protect the barn from

observation by those standing in open fields.  *Id.*

The last case discussed by this court is <u>United States v. Hatch</u>, 931 F.2d 1478

(11th Cir. 1991).  <u>Hatch</u> noted that:

> The denial of a motion to suppress presents a mixed question of law and
> fact.  *United States v. Alexander*, 835 F.2d 1406, 1408 (11th Cir. 1988).
> Findings of fact are upheld unless clearly erroneous.  *Id.* at 1408; *United
> States v. Edmondson*, 791 F.2d 1512, 1514 (11th Cir. 1986).  Significantly,
> for our purposes here, what is curtilage, and, therefore, within the realm of
> legitimate privacy expectations, is a question of fact.  *United States v.*

> *Berrong*, 712 F.2d 1370, 1374 (11th Cir. 1983).  Application of law to fact
> is subject to de novo review.  *Alexander*, 835 F.2d at 1408.  In reviewing
> denial of a motion to suppress, we construe the facts in the light most
> favorable to the prevailing party below.  *Id.*; *United States v. Sarda-Villa*,
> 760 F.2d 1232, 1235 (11th Cir. 1985).

931 F.2d at 1480.  The court held that the marijuana found in that case was not within

the curtilage.  It was growing 30 yards from defendant's home, and the patch was

separated from the home by several fences, several buildings, and stock pens.  *Id.*  The

court found it immaterial that the defendant had erected a perimeter fence around the

whole 300 acre tract, or that the marijuana was not visible to a passer-by, and could be

seen only by proceeding down a footpath.  *Id.*, at 1481.

A case decided several years after the trial in this case is United States v. Taylor,

458 F.3d 1201 (11th Cir. 2006).  In that case, defendant's property of 5 acres consisted

of a house, barn, and pond, with a perimeter fence and a livestock interior fence.  458

F.3d at 1203.  Officers responded to a domestic violence 911 call.  *Id.*  Two 911 calls

had been placed, but the caller had abruptly hung up, as if someone was preventing the

call from going through.  *Id.*  After questioning defendant, and not finding his girl friend,

one officer walked behind the barn and discovered evidence that led to discovery of a

shotgun in the pond.  *Id.*, at 1204.  Defendant was a convicted felon.  *Id.*

The court reviewed the sequence of events and concluded that the officers'

encounter with defendant was within the "knock and talk" exception to the Fourth

Amendment's requirement for a warrant, thus causing them to be lawfully on the

premises to that point.  *Id.*, at 1205.  There was a genuine issue of consent, however, to

the search of the pond.  *Id.*  The court concluded that the pond was not within the

curtilage.  It reasoned that pond was about 230 feet from the house and was separated

from the house by the barn, and was not being used for an "intimate activity of the

home." *Id.*, at 1207.  The court noted the outer perimeter fence, but found it significant

that there was no fence enclosing the house and pond.  *Id.*  Finally, the pond area was

"situated well beyond the 'immediate domestic establishment' of [defendant's] home

and [was] clearly visible from the perimeter fence," and no steps had been taken to

protect it from view.  *Id.*, at 1208.  The court held it to be an "unoccupied and

undeveloped area" and not within the curtilage.  *Id.*

In United States v. Nichols, 2007 WL 2614546, No. 06-15693 (11th Cir. Sep. 12,

2007), the court held that marijuana growing 400 feet beyond the house and 30 feet

beyond a large chicken house (the outermost point of the curtilage) was beyond the

curtilage.  *Id.*, at *3.  The property, like Defendant's here, was rural.  The court

described it as:

> a parcel of land exceeding twelve rural acres that contained his residence,
> a workout room, a garage, a large chicken house, hundreds of chicken
> tepees, a dry creek bed, broken down automobiles, and a mobile home,
> all of which were surrounded by a perimeter fence.  There was no interior
> fencing within the perimeter separating the residence from where the
> chickens were allowed to roam freely and the vegetation to grow naturally.

*Id.*, at *2.  The marijuana, as here, was in plain view, this time by air.  *Id.*

Defendant contends that this court's ruling would have been reversed on appeal.

He argues that his property consisted of 7 acres, his residence was set back from the

road and, due to trees in the front, was not visible from the road.  Doc 79, p. 11, p. 16

on ECF.  He argues that his property was one parcel, had a definable boundary, a fire

break, and no fence within the boundary.  *Id.*  He contends that the marijuana plants

were 150 yards from his home.  *Id.*  He argues that family gatherings took place behind

his home, and that he had a tree house for his children and grandchildren, where they played on a daily basis, 10 yards from the growing marijuana.  *Id.*

The tree house argument[1] is like the failing chicken coop argument in <u>Nichols</u>. The tree house could have been part of the curtilage (and the court need not so decide), but the marijuana patch was not.  Ineffective assistance of counsel has not been shown.

**Ground three**

Defendant contends his attorney was ineffective for not arguing that he could not have been subjected to an enhanced sentence without a finding by the jury that he had a prior drug conviction.  Doc. 79, p. 4 (p. 4 on ECF).  This claim is without merit.

<u>Blakely v. Washington</u>, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) said:

> *Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

542 U.S. at 301, 124 S.Ct. at 2536, *quoting,* <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000) (emphasis added).  Defendant's supplemental authority, <u>Cunningham v. California</u>, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), a case decided on certiorari from a state direct appeal, repeated the same exception for prior convictions, citing <u>Apprendi</u> and the cases following.  127 S.Ct. at 860.  *See also*, <u>James v. United States</u>, __ U.S. __, 127 S.Ct. 1586, 1600, n. 8, 167 L.Ed.2d 532 (2007) ("we have held that prior convictions need not be treated as an element of the offense for Sixth Amendment purposes," citing <u>Almendarez-Torres v.</u>

---

[1] There is no citation to the record for any evidence of a children's tree house.

United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)).  Likewise, our

circuit continues to follow Almendarez-Torres.  United States v. Gibson, 434 F.3d 1234

(11th Cir.), *cert. denied*, 126 S.Ct. 2911 (2006) (not unconstitutional to impose U.S.S.G.

4B1.1 career offender enhancements based upon prior convictions); United States v.

Shelton, 400 F .3d 1325, 1329 (11th Cir. 2005).

> Though wounded, *Almendarez-Torres* still marches on and we are ordered
> to follow.  We will join the funeral procession only after the Supreme Court
> has decided to bury it.

Gibson, 434 F.3d at 1247.  Ineffective assistance has not been shown.

**Ground four**

Defendant contends his attorney was ineffective for failing to call a botanist to

testify as to the count of marijuana plants.  Defendant argues that an expert in botany

could have determined the type of plant for those having no observable leaf formation

(i.e., dead or dying plants).  He also argues that an expert could have distinguished

marijuana plants mixed with other plants, and dead marijuana plants.  Defendant

submits a letter from a botanist that states:  "A recount of your evidence plants may be

worthwhile, but keep in mind that a recount may not reach a conclusion that would favor

a sentence reduction."  Doc. 79, p. 28 on ECF.

The Government notes without dispute from Defendant that the trial had

testimony from Lavelle Pitts, the former Sheriff of Bay County and a former head of the

Florida Marine Patrol, who counted 97 marijuana plants.  The Government had

presented testimony that two officers videotaped a counting that found the total to be

110.  Another count was done in front of the jury, and the count was 111 marijuana

plants.  Doc. 87, p. 9.

The claim is that a botanist might have provided helpful testimony, but Defendant does not allege that botanist has in fact conducted a recount of the plants and found the number to be less than 100.  Indeed, it is probable that the plants have now been destroyed and a recount is impossible.  Nor has Defendant alleged facts that would reasonably lead to the conclusion that had a botanist been called as a witness at trial, his count *probably would* have been less than 100 plants.  To state a claim of ineffective assistance of counsel, a Defendant must allege facts that, if true, would undermine the court's confidence in the outcome in his favor.  "A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  "Conclusory allegations of ineffective assistance are insufficient."  Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (drug quantity at sentencing, failure to allege specific facts), *quoting*, United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991) (same); Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir. 1985), *cert. denied*, 479 U.S. 918 (1986) (defendant's conclusory allegations about the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel); Bolder v. Armontrout, 921 F.2d 1359, 1363-1364 (8th Cir. 1990), *cert. denied*, 502 U.S. 850 (1991); United States v. Vargas, 920 F.2d 167, 169-170 (2d Cir. 1990), *cert. denied*, 502 U.S. 826 (1991).  The allegations with respect to ground four fail to state a claim of a violation of the Sixth Amendment.

**Ground five**

In the supplement, Defendant brings a fifth claim.  Defendant contends that he was denied due process because the prosecution did not give proper notice, and the

court did not comply with the requirements of 21 U.S.C. § 851 or personally address

him with respect to the prior conviction sentence enhancement.  Doc. 90, p. 2.  He

contends that his attorney was ineffective for failing to raise these claims at trial and on

appeal.  *Id.*

The Government's notice of enhancement identified the prior conviction by case

number and gave notice of the intent to seek a sentencing enhancement, but it did not

explain the specifics of the enhancement range.  Doc. 18.  It simply cited 18 U.S.C. §§

851 and 841(b).  *Id.*  This was correct.  A Defendant must be advised of the maximum

potential penalty before a guilty plea may be accepted, *see* FED. R. CRIM. P. 11(b)(H),

but 21 U.S.C. § 851 only requires that the prosecutor, "before trial, or before entry of a

plea of guilty," give notice of the "previous convictions to be relief upon."  There is no

requirement that the prosecutor explain the nature of the possible sentence

enhancement.

Further, this aspect of the claim is contrary to the record.  Defendant had ample

notice.  At the detention hearing, the prosecutor, Chris Canova, said:

> Your Honor, you have identified the penalties.  Ordinarily this would be a
> five-year minimum with a 40-year maximum.  However, as you stated,[2]
> the defendant has a prior – prior offense of the same nature, and because
> of that he would be subject to a ten-year minimum mandatory prison
> sentence and a maximum of life.

Doc. 69, pp. 5-6.

The claim that the Court did not "personally" address Defendant about the prior

conviction is also factually incorrect.  The Court asked counsel for Defendant whether

---

[2] The magistrate judge has just said that the enhanced penalty was a prison
sentence of ten years to life.  Doc. 69, p. 3.

she contested the fact or validity of the prior conviction, and counsel said that neither

was contested.  Doc. 65, pp. 4-5.   Defendant said he had read the presentence report.

*Id.*, at 3.  Then the Court turned to Defendant and said:

> And, Mr. Hobby, one thing I need to tell you about the use of that prior
> conviction in connection with this sentencing.
>
> If you have any challenge to the use of that sentence, you have to make it
> now.  Ms. Clyatt has argued about that.  But what I need to tell you is that,
> if you claim that there is any ground over and above what Ms. Clyatt has
> already said for not taking that conviction into account in connection with
> this sentencing, you need to make that objection by not later than today.
>
> *           *           *
>
> . . . Did you understand what I said?

*Id.*, at 6.  Defendant responded "I think."  He said nothing more about his prior

conviction.  *Id.*

As argued by the Government, the only possible error was that the Court did not

ask Defendant personally whether he affirmed or denied that he had been previously

convicted as alleged in the information giving notice of intent to seek an enhanced

sentence.  This is a requirement of 21 U.S.C. § 851(b).  Had the court asked Defendant

personally to affirm or deny his prior conviction, he probably would have affirmed.

Defendant has just heard his attorney say that the prior conviction existed in fact and

was valid.  Had he denied the conviction, the court would have found the conviction

imposed by this court to have existed in fact and been valid.  Defendant has not alleged

anything to the contrary.  The failure of Defendant's trial lawyer to bring this error to the

attention of this Court could not have possibly prejudiced the outcome.

Ineffective assistance of appellate counsel has not been shown either.  Since no trial objection was made, on appeal this claim would have been reviewed for plain error.[3]  United States v. Ellis, 326 F.3d 593, 598 (4th Cir.), *cert. denied*, 540 U.S. 907 (2003).  Plain error was committed, but relief on appeal is afforded only if the error affected Defendant's substantial rights.[4]  *Id.*, at 598-599.  It did not.  Defendant's counsel admitted the fact and validity of the conviction, just as in the Ellis case, and there is no evidence that the conviction did not exist or was not valid.  Further,

> A trial court is not required "to adhere to the rituals of § 851(b) where a defendant, as a matter of law, is precluded from attacking the conviction forming the basis of the enhancement information."  *United States v. Nanez*, 694 F.2d 405, 413 (5th Cir.1982), *cert. denied*, 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983).

United States v. Weaver, 905 F.2d 1466, 1482  (11th Cir. 1990), *cert. denied*, 498 U.S. 1091 (1991).  The validity of Defendant's conviction could not have been contested since it was over five years old.  21 U.S.C. § 851(e).  Appellate counsel was not ineffective for failing to make a claim that had not merit.  Thus, ground five is without merit.

**Conclusion**

---

[3] Had an objection been made, review would have been for harmless error.  "All courts of appeals which have considered the question presently hold that failure to engage in the colloquy required by section 851(b) is subject to 'harmless error' analysis."  United States v. Romero-Carrion, 54 F.3d 15, 18 (1st Cir. 1995) (citing cases from the Fifth, Seventh, Ninth, and the Eleventh Circuits; the Eleventh Circuit case is the Weaver case, *infra*)).

[4] Plain error has four requirements.  "First, there must be an error.  Second, the error must be plain.  Third, the error must affect substantial rights of the defendant.  Fourth, the error must seriously affect the fairness, integrity, or public reputation of a judicial proceeding."  United States v. Humphrey, 164 F.3d 585, 588 n. 3 (11th Cir. 1999), *citing*, United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993).

For these reasons, it is **RECOMMENDED** that Defendant Collis Edward Hobby's motion to vacate and set aside a sentence filed pursuant to 28 U.S.C. § 2255, doc. 79, be is **DENIED with prejudice**.

**IN CHAMBERS** at Tallahassee, Florida, on December 7, 2007.


s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**